IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| WILLIAM BOYD, | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | |
| vs. | ) | |
| | ) | Civil Action No. 05-115 |
| ROBERT SHANNON, THE DISTRICT | ) | Judge Joy Flowers Conti/ |
| ATTORNEY OF ALLEGHENY COUNTY, | ) | Magistrate Judge Amy Reynolds Hay |
| and THE ATTORNEY GENERAL OF | ) | |
| PENNSYLVANIA, | ) | |
| | ) | |
| Respondents | ) | |

REPORT AND RECOMMENDATION

I.   RECOMMENDATION

It is respectfully recommended that the habeas corpus
petition, filed pursuant to 28 U.S.C. § 2254, be dismissed and
that a certificate of appealability be denied.

II.  REPORT

William Boyd ("Petitioner"), is a State prisoner, who, as
the trial court described it, was the leader of an illegal drug
dealing business who was involved in a war with a rival illegal
drug dealing business.  As a result of this war, Petitioner
sought to kill or have killed several of the rival drug dealers.
Petitioner was charged in two separate indictments.  The first
indictment charged that on January 11, 1991, Petitioner was
guilty of aggravated assault and violating the gun laws when he
shot a member of the rival drug dealers.  Doc. 11, Ex. 3.  The
second indictment charged that in January 1991 Petitioner

conspired to kill the rival drug dealers and that on January 22, 1991, Petitioner engaged in three counts of aggravated assault by shooting into a car which held a rival drug dealer and he also violated the gun laws.  Doc. 11, Ex. 2.  The shooting resulted in the severe wounding of three people, including a two year old child.  Petitioner was convicted by a jury of all counts. Petitioner now brings this federal habeas petition attacking his state sentence.  Many of Petitioner's claims lack merit as he has failed to show that the state courts' disposition of his claims was contrary to or an unreasonable application of federal law. In addition, Petitioner concedes that several of his claims are procedurally defaulted.  The court does not reach those claims because Petitioner has failed to show cause and/or a miscarriage of justice.  Accordingly, his petition should be denied.

### A.  Factual and Procedural History

At trial the Commonwealth presented the testimony of Petitioner's underlings in the drug business who, for the most part, were also his co-conspirators in the intended killings. The victim, whom the jury convicted Petitioner of shooting in the January 11, 1991 incident, identified Petitioner as the shooter. The victim had known Petitioner for a very long time prior to the shooting.  In the second incident, one of Petitioner's co-conspirators, Kevin Williams, who drove the get away car on January 22, 1991 when three people had been shot, testified that

he heard shots fired and saw Petitioner running from the area of the shots and he testified that he drove Petitioner away from the scene.  A forensics expert testified that the gun used in the January 11th shooting was also the gun used in the January 22nd shooting.  Doc. 11, Ex. 65 at 10.

Before and during trial, Petitioner was represented by Attorney G. William Bills.  At sentencing and post sentencing, Petitioner was represented by Attorneys Thomas Ceraso and James Ecker.  Doc. 11 at 5.  On direct appeal, Petitioner was represented by Attorney Ceraso.  Doc. 11, Ex. 17.

Attorney Ceraso filed a direct appeal to the Superior Court.[1]  The Superior Court, in a published opinion, affirmed the convictions, finding none of the issues raised merited relief. Doc. 16, Ex. 27; Commonwealth v. Boyd, 679 A.2d 1284 (Pa. Super. 1996).  Attorney Ceraso then filed a petition for allowance of

---

[1]  In his direct appeal brief to the Superior Court, Attorney Ceraso raised the following issues:

A.  DID THE COURT ERR IN DENYING THE MOTION TO DISMISS FOR VIOLATION OF THE INTERSTATE AGREEMENT ON DETAINERS[?]
B.  DID THE COURT ERR IN ADMITTING CERTAIN PREJUDICIAL EVIDENCE PARTICULARLY RELATING TO MOTIVE WHICH WAS SO EXPANSIVE AND PREJUDICIAL AS TO INVALIDATE A FAIR PROCEEDING?
C.  PETITION FOR ALLOWANCE OF APPEAL RELATING TO THE DISCRETIONARY ASPECT OF SENTENCING.

Doc. 11, Ex.20 at 3.  Attorney Ceraso filed a petition for reargument before the Superior Court.  The petition was denied.  Doc. 16, Ex. 29.

appeal ("PAA") with the Pennsylvania Supreme Court.[2]  The
Pennsylvania Supreme Court denied the PAA.  Doc. 16, Ex. 31. No
writ for certiorari was filed.

Petitioner then filed a pro se PCRA petition.  Doc. 17, Ex.
32.  Eventually Attorney Mark Lancaster was retained and
subsequently filed an amended PCRA petition (the "July 1999 PCRA
petition").[3]

_____

[2]  The only two issues raised in the PAA were as follows:

   1.  DID THE COURT ERR IN DENYING THE MOTION TO DISMISS
FOR VIOLATION OF THE INTERSTATE AGREEMENT ON DETAINERS?

   2.  DID EXTRA JUDICIAL REMARKS OF THE TRIAL JUDGE
DURING TRIAL ADVERSELY AFFECT PETITIONER['] S RIGHT TO A FAIR
TRIAL?

Doc. 16, Ex. 30 at 3.

[3]  In the July 1999 PCRA petition, the following issues were
raised:

A.  Ineffective assistance of trial and appellate counsel
[in that]
   1.  Trial counsel failed to request a proper and vital
jury instruction in this circumstantial case where Defendant
presented alibi evidence at the time of trial and the
contrary incriminating evidence came from biased and/or
corrupt sources.
      a) Specifically, trial counsel filed a Notice of
      Alibi Defense, presented alibi testimony and
      failed to request an alibi instruction;
      b) Appellate counsel was ineffective for failing
      to raise this meritorious issue on direct appeal;
      c) Trial counsel was ineffective for failing to
      have an alibi witness (Rochelle Robinson)
      available when directed by the Court to proceed
      with the defense, particularly when this witness
      had been interviewed and was willing to be
      present when requested;
      d) Appellate counsel was ineffective for failing
      to raise this meritorious issue on direct appeal;
      e) Trial counsel was ineffective for filing an
      alibi notice that was inconsistent with the alibi

4

testimony presented at trial;
f) Appellate counsel was ineffective for failing to raise this meritorious issue on direct appeal;
g) During the trial of this case, counsel had preserved issues regarding the admissibility of "other crimes" evidence via pretrial motions and standing objections, which were, in large measure, overruled.  (Specifically, this evidence related to "owe sheets;" "gang" beeper codes; a "shots fired" episode on December 30, 1990; and photos of Mr. Boyd and others at S.C.I. Pittsburgh);
h) Likewise, appellate counsel challenged the trial court's ruling in admitting the above described other crimes evidence.  However, on direct appeal, the Superior Court declined to address this issue because appellate counsel failed "... to set forth in both the statement of the case and in the argument of the appellate brief reference to the place in the record where the issue presented to decision on appeal has been raised or preserved below."  (Citation omitted);
i) Appellate counsel was ineffective for failing to properly raise and preserve this meritorious issue;
j) Petitioner also contends that trial and appellate counsel were ineffective for failing to challenge the trial court's in personam jurisdiction as well as failing to raise Pa.R.Crim.P. 1100 as a bar to prosecution.

A review of the record as regards these two (2) issues establishes that the trial court's jurisdiction was in fact challenged by both trial and appellate counsel pursuant to a claimed violation of the Interstate Agreement on Detainers. . . .

B.  The trial court erred in denying trial counsel's request for a brief continuance to secure the presence of a necessary and vital alibi witness, Rochelle Robinson, and this error constituted an abuse of discretion which so undermined the truth- determining process that no reliable adjudication of guilt or innocence could have taken place. 42 Pa.C.S.A. § 9543(a)(2)(i).

1)  By way of pretrial motion, counsel filed an alibi notice indicating a defense to the offenses ". . . at CC9302211 that are charged on January 11, 1991."  (As previously noted, trial counsel's

Petitioner filed a pro se supplemental PCRA petition.  Doc. 17,

---

reference was in error.  Discussions with trial
counsel, along with review of the trial
transcript, reveal that the testimony at trial on
the issue of alibi focused on the offenses
charged at CC9302209 that occurred on January 22,
1991.  Despite the variance between the alibi
notice and testimony at trial, there was no
objection by the prosecution.

2) The alibi notice advises that two (2)
witnesses; Tanail Boyd and Rachelle (sic)
Robinson will testify.

3) Tanail Boyd did in fact testify and provided
Mr. Boyd with an alibi as to the January 22, 1999
case at CC 9302209.

4) However, trial counsel was not prepared, when
required to present the testimony of Mr. Boyd's
mother-in-law, Rochelle Robinson.

5) Nevertheless, trial counsel requested a brief
continuance to secure th presence of Ms.
Robinson.  This request was denied by the trial
court and, in this instance, constituted an abuse
of discretion.

Doc. 17, Ex. 34 at unn. 5-7.

Ex. 35.[4]   Judge Manning dismissed the PCRA petition.  Doc. 17, Ex. 38.

Petitioner filed a pro se notice of appeal to the Superior Court.  Doc. 17, Ex. Nos. 39 & 40.  After Petitioner filed a motion for appointment of counsel, the PCRA court appointed Attorney Michael DeRiso, to represent Petitioner and to file a 1925(b) statement of matters complained of on appeal, which gives notice to the lower court in order for it to prepare an opinion in support of the trial court's disposition of the case.  Doc. 17, Ex. 43.  Attorney DeRiso failed to file the statement and the PCRA court issued its opinion without the benefit of the Rule

---

[4]  In that pro se supplemental PCRA petition, the following issues were raised:

A.  Ineffective assistance of trial and appellate counsel and post conviction counsel which, in a case based on circumstantial evidence, and testimony from corrupt sources which so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.  42 Pa.C.S.A. 9543(a)(2)(ii).

1) Trial counsel failed to request a mistrial when improper inadmissible testimony was admitted to enter trial.

a) Specifically, trial counsel failed to request mistrial when co-counsel questioned Commonwealth witness Kelly Bell about polygraph test and results, and further not objecting to District Attorney using polygraph results to bolster the credibility of Commonwealth witness Kelly Bell.

b) Appellate counsel was ineffective for failing to raise this meritorious issue on direct appeal, Post Conviction counsel was ineffective for refusing to raise this issue.

Doc. 17, Ex. 35 at unn. 2-3.

1925(b) statement.  Doc. 17, Ex. 45.  Petitioner filed another
motion for appointment of counsel.  Doc. 17, Ex. 50.  The PCRA
court then appointed Attorney Mary Beth McCarthy to represent
Petitioner.  She filed a brief in the Superior Court.  Doc. 17,
Ex. 54.  The Superior Court remanded the case to the PCRA court
for the appointment of counsel, who was to file a Rule 1925(b)
statement because the Superior Court found that it was
ineffective assistance of counsel for Petitioner's first PCRA
counsel to fail to file such a statement insofar as issues not
raised in a 1925(b) statement are deemed waived for purposes of
an appeal.  Doc. 17, Ex. 56.  Upon remand, the PCRA court
appointed Attorney Scott Coffey to represent Petitioner.  Doc.
17, Ex. 57.

Attorney Coffey filed a 1925(b) statement on behalf of
Petitioner.[5]  Doc. 17, Ex. 58.  The PCRA court filed its opinion

---

[5]  The issues raised in the 1925(b) statement filed by Attorney
Coffey were as follows:

   1.  The Trial Court erred in failing to hold a PCRA
   evidentiary hearing since it could not make an adequate
   determination of the merits of Appellant's claims regarding
   ineffectiveness of all prior counsel, in the absence of a
   hearing. . . .

   2.  Trial counsel was ineffective for failing to request an
   alibi instruction after he had presented an alibi defense on
   behalf of Appellant at trial. . . .

   3.  Trial counsel was ineffective for failing to present the
   testimony of alibi witness Rochelle Robinson, who is
   Appellant's mother-in-law. . . .

   4. The Trial Court erred in failing to grant a one day
   continuance so that Trial Counsel Bills could secure the

explaining why Petitioner's issues did not merit relief.  Doc.
17, Ex. 61.

Petitioner, through Attorney Coffey, filed an appeal to the
Superior Court.[6]  The Superior Court affirmed the denial of PCRA

_____

> alibi testimony of Ms. Robinson since the failure to permit
> her testimony prejudiced Appellant's case. . . . Appellate
> counsel was ineffective for failing to raise this issue.
> Mr. Lancaster raised this claim in Appellant's Amended PCRA
> Petition ....
>
> 5.  Trial counsel, appellate counsel and PCRA counsel were
> ineffective for failing to object to and/or raise the issue
> of the admission of polygraph testimony at trial.

Doc. 17, Ex. 58 at ¶¶ 1-5.

[6]  In his appellate brief to the Superior Court, Petitioner
raised the following issues:

> 1.  Did the Trial Court err in failing to hold a PCRA
> Evidentiary Hearing regarding Appellant's claim that Trial
> Counsel was ineffective for failing to request an alibi jury
> instruction after he had presented an alibi defense at trial
> and presented the alibi testimony of Tanail Boyd?  All prior
> and subsequent counsel were ineffective for failing to raise
> this issue.  Appellant also avers that, regarding this
> issue, his federal rights to ineffective assistance of
> counsel, pursuant to the Pennsylvania Constitution and the
> Sixth and Fourteenth Amendments to the Federal Constitution,
> were denied.
>
> 2.  Did the trial court err in failing to hold a PCRA
> Evidentiary Hearing regarding Appellant's claim that Trial
> Counsel was ineffective for failing to present the testimony
> of alibi witness Rochelle Robinson? All prior and subsequent
> counsel were ineffective for failing to raise this issue.
> Appellant also avers that, regarding this issue, his federal
> rights to effective assistance of counsel, pursuant to the
> Pennsylvania Constitution and the Sixth and Fourteenth
> Amendments to the Federal Constitution, were denied.
>
> 3.  Did the Trial Court err in failing to grant a one day
> continuance so that Trial Counsel could secure the alibi
> testimony of Ms. Rochelle Robinson since the failure to
> permit her testimony prejudiced Appellant's case?  Appellate
> counsel was ineffective for failing to raise this issue.

relief.  Doc. 17, Ex. 63.   Petitioner then filed a PAA through Attorney Coffey.  The Pennsylvania Supreme Court denied the PAA via a per curiam order.  Doc. 17, Ex. 65.

The Petitioner then filed the instant habeas petition in this court.  He raised the following issues in that habeas petition as paraphrased by this court:

> 1.  Violation of the Interstate Agreement on Detainers Act
>
> 2.  Ineffectiveness of counsel for failing to request an alibi instruction.
>
> 3.  Ineffectiveness of counsel for failing to subpoena Alibi witness, Rochelle Robinson.
>
> 4.  Fifth, Sixth and Fourteenth Amendment violations based on the trial court's abuse of discretion in denying a 1 day continuance request by counsel, thus depriving Petitioner of his compulsory process for obtaining Alibi witness Rochelle Robinson.
>
> 5.  Sixth and Fourteenth Amendment violations based upon the admission of polygraph testimony.

---

Mark Lancaster, Esquire raised this claim in Appellant's Amended PCRA Petition and the Trial Court erred in failing to hold a hearing regarding this claim.  Appellant also avers that, regarding this issue, his federal rights to effective assistance of counsel, pursuant to the Pennsylvania Constitution and the Sixth and Fourteenth Amendments to the Federal Constitution, were denied.

4.  Were trial counsel, appellate counsel and PCRA counsel ineffective for failing to object and/or raise the issue of the admission of polygraph testimony at trial?  Appellate and PCRA counsel were ineffective for failing to raise or preserve this issue.  Appellant also avers that, regarding this issue, his federal rights to effective assistance of counsel, pursuant to the Pennsylvania Constitution and the Sixth and Fourteenth Amendments to the Federal Constitution, were denied.

Doc. 17, Ex. 62 at 3-4.

10

6.  Violation of his Fifth Amendment right against self
incrimination including Sixth Amendment and Due
Process.

7.  Sixth Amendment and Due Process violation based on
the Trial Court's denial of a requested point for
charge regarding accomplices' testimony and trial
counsel's ineffectiveness for failing to object to the
trial court's denying the requested point for charge
and appellate counsel's ineffectiveness for failing to
raise trial counsel's failure to object.

8.  Fifth, Sixth, and Fourteenth Amendment violations
based on trial counsel's failure to request a
cautionary instruction regarding identification
testimony.

See Doc. 1.  The Commonwealth filed an answer.  Petitioner filed

a traverse.  Doc. 20.

### B.  Applicable Legal Standards

#### 1.  AEDPA is applicable

The Antiterrorism and Effective Death Penalty Act of 1996,

Pub. L. No. 104-132, tit. I, §101 (1996) (AEDPA), which amended

the standards for reviewing State court judgments in federal

habeas petitions filed under 28 U.S.C. § 2254, was effective

April 24, 1996.  Because petitioner's habeas petition was filed

in the year 2005, AEDPA is applicable to this case.  Werts v.

Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

Where the State courts have reviewed a federal issue

presented to them and disposed of the issue on the merits, and

that issue is also raised in a federal habeas petition, AEDPA

provides the applicable deferential standards by which the

federal habeas court is to review the State courts' disposition of that issue. See 28 U.S.C.§ 2254(d) and (e).

In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme Court has expounded upon the standard found in 28 U.S.C. § 2254(d). In Williams, the Court explained that Congress intended that habeas relief for errors of law may only be granted in two situations: 1) where the State court decision was "contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States" or 2) where that State court decision "involved an unreasonable application of[] clearly established Federal law as determined by the Supreme Court of the United States." Id. at 404-05 (emphasis deleted). The Court explained the two situations in the following terms:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13. The Court of Appeals for the Third Circuit has also elucidated the "contrary to" clause by noting that "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate

that Supreme Court precedent requires the contrary outcome."
Werts v. Vaughn, 228 F.3d at 197 (quoting Matteo v.
Superintendent, SCI-Albion, 171 F.3d 877, 888 (3d Cir. 1999)(en
banc)).  Moreover, it is Petitioner's burden to prove the State
court decision is either contrary to or an unreasonable
application of clearly established federal law.  See Matteo, 171
F.3d at 888; Werts v. Vaughn, 228 F.3d at 197.  Under the
"contrary to" clause, the relevant universe of analysis is
restricted to the holdings of United States Supreme Court cases
as they existed at the time of the State court decision.
Williams, 529 U.S. at 412.  In contrast, under the "unreasonable
application" clause, federal habeas courts may consider lower
federal court cases in determining whether the State court's
application of Supreme Court precedent was objectively
unreasonable.  Matteo, 171 F.3d at 890.[7]

### 2.  Standard for Ineffective Assistance of Counsel

In Strickland v. Washington, 466 U.S. 668 (1984), the
Supreme Court explained that there are two components to
demonstrating a violation of the right to effective assistance of
counsel.  First, the defendant must show that counsel's

---

[7]  AEDPA also permits federal habeas relief where the State
court's adjudication of the claim "resulted in a decision that was
based on an unreasonable determination of the facts in light of the
evidence presented in the State court proceeding."  28 U.S.C.
2254(d)(2).  It does not appear that Petitioner casts his arguments
in terms of an unreasonable determination of the facts.  However, even if
he had, it does not appear to this court that any of the factual
determinations of the state court are unreasonable.

performance was deficient.  This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also Williams v. Taylor, 529 U.S. at 390-91.  In reviewing counsel's actions, the court presumes that counsel was effective.

Because the Strickland test is one of objective reasonableness, it does not matter if counsel actually considered the course taken or foregone to determine whether the actions or omissions were objectively reasonable.  As the Court of Appeals for the Eleventh Circuit has explained:

> To uphold a lawyer's strategy, we need not attempt to divine the lawyer's mental processes underlying the strategy. . . . our inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one. *See generally Harich v. Dugger*, 844 F.2d 1464, 1470-71 (11th Cir. 1988) (en banc) (concluding– without evidentiary hearing on whether counsel's strategy arose from his ignorance of law– that trial counsel's performance was competent because hypothetical competent counsel reasonably could have taken action at trial identical to actual trial counsel), *replacing vacated panel opinion*, 813 F.2d 1082 (11th Cir. 1987) (2-1 opinion) (remanding for evidentiary hearing on whether pursuit at trial of actual innocence defense, instead of intoxication defense or a combination of defenses, was informed strategic decision); *Bonin v. Calderon*, 59 F.3d 815, 838 (9th Cir. 1995) (holding– where petitioner alleged that trial counsel's mental processes were impaired by drug use– that, because an objective standard is used to evaluate counsel's competence, "once an attorney's conduct is shown to be objectively reasonable, it becomes unnecessary to inquire into the source of the attorney's alleged shortcomings"). . . .
> We look at the acts or omissions of counsel that the petitioner alleges are unreasonable and ask whether some reasonable lawyer could have conducted the trial in that manner. Because the standard is an objective

one, that trial counsel (at a post-conviction
evidentiary hearing) admits that his performance was
deficient matters little. *See Tarver v. Hopper*, 169
F.3d 710, 716 (11th Cir. 1999) (noting that "admissions
of deficient performance are not significant"); *see
also Atkins v. Singletary*, 965 F.2d 952, 960 (11th Cir.
1992)("[I]neffectiveness is a question which we must
decide, [so] admissions of deficient performance by
attorneys are not decisive.").

Chandler v. United States, 218 F.3d 1305, 1316 n.16 (11th Cir.

2000).[8]  See also Strickland 466 U.S. at 689 (one claiming

ineffectiveness "must overcome the presumption that, under the

circumstances, the challenged action **'might** be considered sound

trial strategy.' (cit. omitted).") (emphasis added).  In light of

the foregoing, the Court of Appeals for the Third Circuit has

explained, "[i]t is [] only the rare claim of ineffective

assistance of counsel that should succeed under the properly

deferential standard to be applied in scrutinizing counsel's

performance." United States v. Kauffman, 109 F.3d 186, 190 (3d

Cir. 1997)(quoting United States v. Gray, 878 F.2d 702, 711 (3d

Cir. 1989)).

Second, under Strickland, the defendant must show that he

was prejudiced by the deficient performance. "This requires

---

[8]  In light of the foregoing analysis, the court rejects
Petitioner's contention that a letter from his trial counsel, Attorney
Bills, in which Attorney Bills writes that "I agree that I did not
request certain instructions during your trial and should have[,]"
Doc. 1, at 90, requires the holding of an evidentiary hearing in this
court.  See Doc. 1 at 18.   This is so because, *inter alia*, even if
the court assumes no reasonable strategy, in light of the strong
evidence of his guilt, Petitioner cannot make the requisite showing of
prejudice, as discussed below in addressing the alibi issue.

showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687.  To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Williams, 529 U.S. at 391. In addition, in undertaking a prejudice analysis, the Court properly considers the strength of the evidence against the defendant because "... a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." Buehl v. Vaughn, 166 F.3d 163, 172 (3d Cir. 1999).  The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in performance prong and the prejudice prong.  See Strickland, 466 U.S. at 687; Dooley v. Petsock, 816 F.2d 885, 889 (3d Cir. 1987). As a result, if a petitioner fails on either prong, he loses. Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000);  Foster v. Ward, 182 F.3d 1177, 1184 (10th Cir. 1999).

Many of the issues Petitioner raises in this habeas petition are issues of ineffectiveness of counsel or are issues that are now only properly cognizable as ineffective assistance claims. Most of these ineffective assistance of counsel claims were

addressed on the merits by the State courts.  In disposing of
these ineffective assistance claims, the State courts relied upon
the test announced in Commonwealth v. Pierce, 527 A.2d 973 (Pa.
1987).  Doc. 17 Ex. 63 at 9 (Superior Court opinion on PCRA
appeal).[9]  The Pennsylvania Supreme Court has developed an
ineffective assistance standard that requires a petitioner to
demonstrate that (1) the underlying claim is of arguable merit,
(2) counsel had no reasonable basis for the act or omission in
question, and (3) but for counsel's act or omission, the outcome
of the proceedings would have been different.  Commonwealth v.
Pierce, 527 A.2d at 975.  See also Commonwealth v. Douglas, 654
A.2d 226, 230-31 (Pa. 1994).  This standard has been found to be
materially identical to the test enunciated in Strickland.  See
Werts, 228 F.3d at 203.  The Third Circuit Court has ruled that
this standard is not "contrary to" Strickland, in the first sense
of contrary to, i.e., applying a wrong rule of law,[10] and
therefore, "the appropriate inquiry is whether the Pennsylvania

---

[9] The Superior Court opinion, on PCRA appeal, cited to
Commonwealth v. Wilson, 672 A.2d 293 (Pa. 1996) which in turn, cited
to Commonwealth v. Weiss, 606 A.2d 439, 441-442 (Pa. 1992), which in
turn cited to Commonwealth v. Pierce for the legal standard of
ineffectiveness.  Doc. 17, Ex. 63 at 9.

[10] Of course, it would remain open to Petitioner to show that the
State Courts' adjudication of his claim was contrary to United States
Supreme Court precedent in the second sense of "contrary to," i.e.,
demonstrating the existence of a Supreme Court case that was factually
indistinguishable from the State Court case, yet the State Court
decided it differently from the Supreme Court. Petitioner has not done
so in this case however.

courts' application of <u>Strickland</u> to [petitioner's]
ineffectiveness claim was objectively unreasonable, i.e., the
State court decision, evaluated objectively and on the merits,
resulted in an outcome that cannot reasonably be justified under
<u>Strickland</u>." <u>Werts</u>, 228 F.3d at 204.  Because the State courts
decided Petitioner's claims of ineffective assistance of counsel
under the standards of <u>Pierce</u> and those standards are the same as
the <u>Strickland</u> standard, this court is required to apply the
deferential standard of 28 U.S.C. § 2254(d), which demands that a
habeas petitioner demonstrate that the State Court's adjudication
of the federal claim resulted in a decision that was contrary (in
the second sense) to United States Supreme Court precedents or an
unreasonable application of those precedents.

   **C. Discussion**

      **1.  The Interstate Agreement on Detainers**

   The first issue is Petitioner's contention that the
Commonwealth violated the Interstate Agreement on Detainers
("IAD").  He claims a violation of the speedy trial provisions
contained therein as well as a violation of Article V of the IAD,
which provides, in part, that the "temporary custody referred to
in this agreement shall be **only** for the purpose of permitting
prosecution on the charge or charges contained in one or more
untried indictments, informations, or complaints which form the

basis of the detainer or detainers. . . .  42 Pa.C.S.A. § 9101
Art. V(g) (emphasis added).

The facts underlying this claim are that Petitioner was in
the custody of New Jersey serving a criminal sentence, when
Pennsylvania indicted Plaintiff on original charges unrelated to
the current charges and lodged those original charges as
detainers in New Jersey.  Pursuant to Article III(a), Petitioner
filed a request to be tried on these original charges.  This
request triggered a 180 day time limit (calculated from the time
of receipt of Petitioner's request by the Commonwealth) within
which Petitioner had to be brought to trial on the original
charges.  Petitioner was brought to Pennsylvania and placed in
its temporary custody pursuant to the IAD.  After a suppression
motion on the original charges was granted, the original charges
were nolle prossed and the current unrelated charges were filed
against Petitioner by the District Attorney of Allegheny County.
It is undisputed that Petitioner was not brought to trial on
these charges within any of the time limits specified in the IAD.

Before addressing the merits of this claim, there is a
fundamental issue concerning this claim that the parties do not
address, that is, which legal standard of review applies.  Is it
the standard announced in Hill v. United States, 368 U.S. 424,
428 (1962), requiring a habeas petitioner to show "a fundamental
defect which inherently results in a complete miscarriage of

19

justice [or] an omission inconsistent with the rudimentary
demands of fair procedure," or is it the standard promulgated in
AEDPA, 28 U.S.C. 2254(d), requiring a habeas petitioner to show
the state court's disposition was contrary to Supreme Court
precedent?  The relationship between AEDPA's standard of review
and the Hill standard of review for claims of federal law
violations is not entirely clear.  This court need not resolve
this question, however, because we conclude that under either
standard, Petitioner's claim fails.

    The mere fact that Petitioner was not brought to trial
within 180/120 days as required by Article III or IV,
respectively, does not render his conviction a complete
miscarriage of justice nor did it result in a proceeding
inconsistent with the rudimentary demands of fair procedure.
See, e.g., McCandless v. Vaughn, 172 F.3d 255, 264 n.4 (3d Cir.
1999) (wherein the court cited and explained the following case
"Casper v. Ryan, 822 F.2d 1283 (3d Cir. 1987) (violation of
article III's requirement of trial within 180 days of request by
detainee not 'fundamental defect' warranting habeas relief)").
In light of the significant testimony as to Petitioner's motive
to engage in the crimes he was charged with and the significant
testimony as to Petitioner's role in those crimes, Petitioner has
failed to show that although there may have been a violation of
the IAD, the violation resulted in a complete miscarriage of

justice or in proceedings that were inconsistent with the rudimentary demands of fair procedure.  <u>See</u>, <u>e.g.</u>, <u>Reed v. Farley</u>, (violation of time limits of IAD did not meet the <u>Hill</u> standard); <u>Cooney v. Fulcomer</u>, 886 F.2d 31 (3d Cir. 1989)(violation of the time limits of the IAD do not warrant habeas relief because they do not meet <u>Hill</u> standard).

Nor does the fact that Petitioner was brought to Pennsylvania on one set of charges based on a detainer and ultimately tried on unrelated charges which may constitute a violation of the IAD merit habeas relief.  <u>See</u>, <u>e.g.</u>, <u>McCandless v. Vaughn</u>.

In <u>McCandless</u>, a state convict challenged his murder convictions based on the claim, like Petitioner herein, that Pennsylvania filed a detainer on one set of charges but then tried him on a different murder charge in violation of Article V of the IAD.  The Third Circuit Court in <u>McCandless</u> described the facts of that case as follows:

> The parties agree that (i) McCandless was incarcerated in New Jersey when Pennsylvania filed murder charges against him; (ii) Pennsylvania filed its IAD request based upon charges wholly unrelated to the Stebelski murder; and (iii) Pennsylvania prosecuted McCandless on the murder charge when they gained custody under their IAD request. The parties also agree that this clearly violated Article V(d). They disagree, however, on whether this IAD violation warrants habeas relief. We conclude that our decision in *Cooney v. Fulcomer*, 886 F.2d 41 (3d Cir.1989), is controlling here and that habeas relief must be denied.

21

McCandless v. Vaughn, 172 F.3d at 263.[11]  As this court finds McCandless indistinguishable from this case, the same result must obtain herein, habeas relief should be denied.

Even if the AEDPA standard applies, Petitioner has not met his burden to show that the Superior Court's disposition of his claims on direct appeal, which occurred on June 17, 1996, was contrary to or an unreasonable application of extant Supreme Court precedent.  Petitioner has not even argued that the Superior Court disposition was contrary to or an unreasonable application of Supreme Court precedent extant at the time of the Superior Court's decision.  Hence, habeas relief should be denied as to this claim.  Indeed, the Superior Court's holding, as a matter of statutory construction, that dismissal of charges which were not the subject of a detainer is not required by the IAD's Articles requiring dismissal of charges not brought within the IAD's time limits is not unreasonable, nor is its conclusion that prejudice must be shown to merit relief for violation of Article V.  See, e.g., McCandless v. Vaughn; Parker v. United States, 590

_____

[11]  Although McCandless v. Vaughn was decided post-AEDPA, it appears that the habeas petition therein was filed before the effective date of AEDPA, which was April 23, 1996.  The habeas petition in McCandless was filed on March 21, 1996.  See McCandless v. Vaughn, No. 96-cv-02310-HH (E.D. Pa. Doc. 1).  Hence, the new provisions of AEDPA had no application.  McCandless v. Vaughn, 172 F.3d at 259 ("AEDPA's habeas corpus amendments do not apply to this case because McCandless's application was filed prior to, and was pending on, AEDPA's effective date.").  Thus, McCandless does not resolve our question as to the applicable standard.

A.2d 504 (D.C.), *cert. denied*, 502 U.S. 973 (1991); <u>Grant v.</u>
<u>United States</u>, 856 A.2d 1131, 1139 (D.C. 2004).[12]

> **2.  Ineffectiveness for failure to request alibi instruction**

Petitioner next complains that his trial counsel was ineffective for failing to request an alibi instruction.  The Superior court concluded that Petitioner suffered no prejudice as the result of his trial counsel's failure to request an alibi instruction.

In light of the following evidence of Petitioner's guilt, Petitioner cannot show prejudice.  As for the January 11th shooting incident where one victim, Tom Easley, was shot by the Petitioner, the victim, who had known Petitioner a long time, identified the Petitioner as the shooter.  See Doc. 1 at 80.  As for the January 22nd incident of shooting several people in the car, the self admitted co-conspirator, Kevin Williams, testified that Petitioner hid in bushes in order to shoot the victims and as the car with the victims in it approached the Petitioner, the co-conspirator heard four shots ring out and he saw Petitioner run down the driveway and jump into the get away car which was driven by Kevin Williams.  Moreover, there was ample and abundant

---

[12]  One of Petitioner's arguments was that failure to comply with the IAD divested the Pennsylvania courts of both subject matter jurisdiction and personal jurisdiction.  Petitioner is wrong. <u>McCandless v. Vaughn</u>, 172 F.3d at 264 ("The Court of Common Pleas did not depend upon the IAD for personal or subject matter jurisdiction. Both are independently provided by other Pennsylvania statutes.").

testimony concerning Petitioner actively seeking out and encouraging several people to shoot and/or kill the rival drug sellers.  Among the Commonwealth witnesses was a life-long friend of Petitioner's by the name of Kelly Bell, who gave damning testimony as to Petitioner's role in wanting to kill and/or shoot the rival drug sellers.  In addition, there was the forensic testimony that identified the gun used in the January 11, 1991 shooting as the same gun used in the January 22 shooting.

Petitioner contends however, that he was prejudiced because absent the alibi instruction, the jurors may have inferred that simply because they did not believe his alibi testimony he must be guilty.  In other words, Petitioner suggests that the jurors may have improperly placed the burden upon him to prove his innocence rather than place the burden on the Commonwealth to disprove his alibi.

However, the court finds persuasive the reasoning of the court in Meyer v. Lanham, 27 F.Supp.2d 616, 619 (D. Md. 1998). The petitioner in Meyer, was convicted of, inter alia, the first degree murder of a mother and the second degree murder of the mother's three month old child.  Petitioner complained that his trial counsel was ineffective for failing to request a jury instruction indicating that the state bore the burden to disprove the alibi defense.  The trial court had agreed to give such an instruction but failed to do so.  The petitioner's counsel failed

24

to object.  In his federal habeas petition, the petitioner raised

such failure as a claim of ineffectiveness in addition to raising

the state court's failure as a violation of due process.  The

Meyer court rejected these claims based on the following

reasoning:

> There is, though, no specific federal right recognized
> by the Supreme Court of the United States to have an
> alibi instruction.
>      In this case, trial counsel requested the court to
> instruct the jury that "the State had the burden to
> disprove alibi".  In point of fact, no such instruction
> was given, despite the fact that the trial judge agreed
> to do so.  The state post conviction court held that
> any such omission was harmless, in that the trial court
> specifically advised the jury that it had the duty to
> find, before convicting the defendant, that all of the
> elements of the offenses had been proved beyond a
> reasonable doubt.  Obviously, the element of criminal
> agency is one of the essential elements of proof for
> first and second degree murder, and, as the PCPA court
> noted in its opinion at 9, it was the key issue on
> which this entire case focused.  Thus, as a due process
> matter, failure to give the requested "belt and
> suspenders" instruction on alibi did not so taint the
> proceedings as to warrant federal habeas corpus relief.
> In no significant way did the omission of the requested
> supplemental instruction diminish the state's burden of
> proving the defendant guilty beyond a reasonable doubt.
> *Cf. Fulton v. Warden*, 744 F.2d 1026 (4th Cir.1984),
> cert. denied,473 U.S. 907 (1985).  It is interesting to
> note, that, in Fulton itself, there was a finding of
> harmless error in the giving of a jury instruction that
> was clearly unconstitutional (as it put the burden of
> proving alibi on the defendant, essentially relieving
> the State of proving criminal agency beyond a
> reasonable doubt).  In this case, nothing even close to
> that level of burden-shifting occurred, much less did
> the trial court's failure to give the instruction taint
> the trial with fundamental unfairness.
>      Petitioner next contends that trial counsel was
> ineffective in failing properly to object to the trial
> court's failure to give the supplemental alibi
> instruction.  The PCPA court held, at 9, that counsel

25

> acted within the range of reasonable professional
> competence in deciding not to press the issue further,
> and it also held, id., that there was no prejudice, in
> the sense that the result of the proceeding would not
> have been any different had the issue been pressed.
> This analysis by the PCPA court is neither contrary to,
> nor does it involve an unreasonable application of,
> clearly established federal law. *Strickland v.*
> *Washington*, . . . .

Id. at 19.  The reasoning of the Meyer court is equally

applicable herein.  Petitioner has not shown prejudice from trial

counsel's failure to request an alibi instruction and/or from

direct appellate counsel's failure to raise trial counsel's

ineffectiveness in this regard.  This issue does not merit

relief.

### 3.    Ineffective Assistance of Counsel for Failing to subpoena Rochelle Robinson

Plaintiff complains that trial counsel was ineffective for

failing to subpoena and have present Rochelle Robinson,

Petitioner's mother-in-law.[13]  The Superior Court rejected this

claim, essentially finding that Ms. Robinson's testimony would

merely have been duplicative of the testimony of Petitioner's

wife and so there was no prejudice established by counsel's

failure to subpoena her.  Doc. 17, Ex. 63 at 11-12 ("Ms.

Robinson's vague assertions regarding what she would have

testified [to] would serve only to duplicate her daughter's

---

[13]  The court understands Petitioner to be making a layered
ineffective assistance claim, i.e., direct appeal counsel was
ineffective for failing to raise trial counsel's ineffectiveness for
not subpoenaing Rochelle Robinson.  See Doc. 1 at 31-34 & at 47-48.

testimony.").  Petitioner has not shown how this disposition is contrary to or an unreasonable application of United States Supreme Court precedent, as is his burden.  Moreover, the Superior Court's disposition is neither contrary to nor an unreasonable application of such precedent.  See, e.g., Crawford v. Lampert, 98 Fed.Appx. 636, 637 (9th Cir. 2004)("To the extent Spencer stated how he would have testified, our independent review of the record reveals that his testimony would have been duplicative of evidence that was admitted at trial.  Under these circumstances, we believe that the state habeas court correctly determined that Crawford failed to show what specific testimony these individuals would have provided in support of his defense and failed to establish a reasonable probability that, had they testified, the outcome of his trial would have been different. We conclude that the state habeas court did not unreasonably apply Strickland in denying the claim that Binns rendered ineffective assistance when he failed to call Douglas Spencer, Stephen Kelly, and Kelly Cox, as witnesses at Crawford's trial.").

> **4.  Did the Trial court violate Petitioner's Fifth, Sixth and Fourteenth Amendment rights when it denied his trial counsel's request for a one day continuance in order to obtain the testimony of Rochelle Robinson.**

This precise issue was waived under state law as it was not raised in his direct appeal brief nor in his PAA on direct

appeal.  Thus, although it was raised in the PCRA proceedings, it was waived for failure to raise it on direct appeal.  However, the only way this issue could have been cognizable in the state PCRA courts was as an ineffective assistance of counsel claim against his direct appeal counsel for failing to raise this issue.  Indeed, Petitioner did raise, in the PCRA proceedings, this precise issue of Direct Appeal Counsel's ineffectiveness.  See Doc. 17, Ex. 58 at ¶ 4; Doc. 17, Ex. 62 at ¶ 3.

The Superior Court addressed this issue as follows: "Appellant's second and third [i.e., appellate counsel's ineffectiveness] issues . . . suffer from the same basic flaw as his alibi instruction issue."  Doc. 17, Ex. 63 at p 10.  The Superior Court determined that the basic flaw with respect to the alibi instruction issue is that Petitioner did not prove he suffered prejudice.  See id. ("we do not find that counsel was ineffective [for failing to request an alibi instruction] because Appellant suffered no prejudice as a result of counsel's failure to request an alibi instruction.").  Hence, the Superior Court essentially concluded that Petitioner had failed to carry his burden to show how he was prejudiced by direct appellate counsel's failure to raise the issue of the trial court's denying a one day continuance to obtain the testimony of Rochelle Robinson.

Petitioner has not carried his burden here to show that the
Superior Court's disposition of this claim was contrary to or an
unreasonable application of Supreme Court precedent.  Indeed, the
Superior Court's disposition was neither.  If, as found above,
Petitioner was not prejudiced by the failure to call Rochelle
Robinson because her testimony was essentially duplicative of
Petitioner's wife's alibi testimony, then it is difficult to see
how the trial court's failure to grant a continuance to obtain
duplicative testimony can be said to have prejudiced Petitioner.
To be more precise, it is difficult to see how the outcome of the
direct appeal would have been reasonably different had direct
appeal counsel raised the issue of the trial court's denial of
the one day continuance.  Petitioner has failed to carry his
burden to show that the outcome of the appeal would have
reasonably been different.  Accordingly, this issue does not
provide a basis for habeas relief.

> **5.   Petitioner's Sixth and Fourteenth Amendment
> rights were violated by the introduction of
> testimony regarding the fact that one of the
> witnesses underwent a polygraph examination.**

To the extent that Petitioner is trying to raise this issue
directly, i.e., the admission of this evidence violated his
Fourteenth Amendment rights to a fair trial, this issue was never
raised as such in the state courts.  Hence, it was waived under

state law[14] and is procedurally defaulted under federal law.[15] Petitioner has not shown cause for the default and indeed he would have none as the only claim he now could have is a layered ineffective assistance of counsel claim that his first PCRA counsel was ineffective for failing to raise the prior counsels' ineffectiveness for failing to raise this issue.  However, the ineffective assistance of PCRA counsel cannot serve as the basis for cause.  See Coleman v. Thompson, 501 U.S. 722, 757 (1991); Hull v. Freeman, 991 F.2d 86, 91 (3d Cir. 1993) ("Under Coleman, ineffective assistance of post-conviction counsel cannot constitute 'cause' because the Sixth Amendment does not entitle a defendant to post-conviction counsel").  Nor can Petitioner establish a miscarriage of justice in light of the substantial evidence of his guilt.  Hence this issue does not provide a basis for relief.

Even if the court were to address this issue on the merits under AEDPA, Petitioner has not carried his burden to show that

---

[14] See Pa.R.A.P. 302(a)("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

[15] A procedural default occurs when a prisoner's federal claim is barred from consideration in the state courts by an "independent and adequate" state procedural rule . . . Federal courts may not consider the merits of a procedurally defaulted claim unless the applicant establishes "cause" to excuse the default and actual "prejudice" as a result of the alleged violation of the federal law or unless the applicant demonstrates that failure to consider the claim will result in a fundamental "miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991); Carpenter v. Vaughn, 296 F.3d 138, 146 (3d Cir. 2002).

the Superior Court's disposition of this claim was contrary to or

an unreasonable application of United States Supreme Court

precedent.

The Superior Court addressed the issue of first PCRA

counsel's ineffectiveness for failing to raise this issue as

follows:

> Prior to trial, the Commonwealth sought to preclude any
> mention of the polygraph results.  However, Appellant
> [i.e., Petitioner herein] filed a motion *in limine* on
> December 13, 1993, and requested that the results of
> the polygraph test taken by Kelly Bell be allowed at
> trial as they were appropriate for cross examination
> purposes.  **See** Certified Record at entry 23.  This
> request was granted.
>
> By way of background, when Mr. Bell was arrested,
> he was questioned by the FBI.  He underwent a polygraph
> test, and from the results, it was determined that the
> statements he gave were untrue – he later admitted in
> his trial testimony he was trying to protect himself.
> **See** N.T. 4/22/1994 -4/25/1994, at 929.
>
> As stated, Mr. Kelly testified against Appellant
> as a witness for the Commonwealth.  **See** N.T. 04/22/1994
> - 04/25/1994, at 803 - 948.  Appellant's co-defendant's
> counsel used the results of the failed polygraph test
> to impeach Mr. Bell's testimony linking the defendants
> to the crimes charged.  **Id**. at 948.  The admission of
> Mr. Bell's failed polygraph only helped Appellant's
> case, as it showed that Mr. Bell gave conflicting
> historical accounts.
>
> It is axiomatic that a failed lie detector test
> cases doubt on that witness' credibility.  The defense
> generally, and Appellant specifically, received a
> benefit from the evidence of Kelly Bell's failed
> polygraph as his testimony was crucial in establishing
> the conspiracy.  The fact that Mr. Bell failed a
> polygraph test showed that he had a history of
> untruthfulness, and it damaged his credibility.
> Accordingly, Appellant suffered no prejudice and
> counsel was not ineffective.

Doc. 17, Ex.  63 at 12-14.

Petitioner does not argue that this disposition is contrary to or an unreasonable application of United States Supreme Court precedent and so fails to carry his burden under AEDPA.

Petitioner's essential complaint is that the use made of the polygraph testimony went to show that previously Mr. Bell was lying but after being confronted with the polygraph results indicating that he was lying, he changed his story to tell the truth and that truthful account was the same account he told on the stand as a witness for the Commonwealth, which Petitioner contends prejudiced him.  Essentially, Petitioner is challenging the Superior Court's interpretation of the record.

Unfortunately, the record is susceptible of both the Superior Court's interpretation and Petitioner's interpretation. The jury could have found that because Bell lied before, his credibility was questionable or the jury could have concluded that having been caught in a lie, he then decided to tell the truth.  Hence, the record is ambiguous and an ambiguous record is simply insufficient for Petitioner to carry his burden for, an ambiguous record, susceptible of either the Petitioner's interpretation or the Superior Court's interpretation means that the Superior Court's interpretation is not unreasonable. Robinson v. Smith, 451 F.Supp. 1278, 1284 n. 6 (W.D.N.Y. 1978)(on habeas review, the court stated that "In my own independent review of the record, I have resolved ambiguities against

petitioner"); <u>Patrick v. Johnson</u>, 2000 WL 1400684, at *9 (N.D. Tex. Aug. 23, 2000) ("whatever ambiguity exists in the record must be resolved in favor of the [state] trial court's finding.").  The court could even assume for the sake of argument that Petitioner's interpretation is the more plausible but that does not thereby render the Superior Court's interpretation unreasonable, nor does it carry Petitioner's burden to show he merits relief.  <u>Cf</u>. <u>Matteo</u>, 171 F.3d at 888 ("[I]t is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's").

### 6.  The Remaining Issues are Procedurally Defaulted

Petitioner concedes that the remaining issues, i.e., the ones denominated above by the court as Issues 6-8 in his habeas petition were procedurally defaulted.  Petitioner claims that: 6) his constitutional rights were violated by the police officer's testimony that Petitioner stated to the officer, "I don't have to talk to the police"; and 7) that the Trial court failed to give a requested point for charge instructing that accomplices' testimony cannot be considered in support of each other's testimony; and 8) his Fifth, Sixth and Fourteenth Amendment rights were violated by the failure of trial counsel to request a cautionary instruction on identification testimony.

These issues were never raised in the state courts.  Hence they are waived as a matter of state law.  Consequently, they are procedurally defaulted for purposes of this habeas petition. The only cognizable claim that Petitioner now has is a layered ineffective assistance of counsel claim that his PCRA counsel were ineffective for failing to raise prior counsels' ineffectiveness for not raising these issues.  However, ineffectiveness of PCRA counsel is not a cognizable claim in federal habeas proceedings because there is no federal right to counsel during PCRA proceedings, nor can ineffectiveness of PCRA counsel serve as cause to excuse a procedural default.  See Coleman v. Thompson, 501 U.S. at 752; Werts v. Vaughn; Hull v. Freeman, 991 F.2d at 91.

This is true notwithstanding Petitioner's contention that he had a state law right to effective assistance of counsel under Pa.R.Crim.P. 904.  Doc. 1, at 58.  Even if he has such a state law right, violation of that state law right does not serve as a basis for federal habeas relief for at least three independent reasons.  First, federal habeas relief does not exist for mere violations of state law.  Engle v. Isaac, 456 U.S. 107 (1982); Wells v. Petsock, 941 F.2d 253 (3d Cir. 1991).  Second, the rule is that violations of even federal rights, yet alone state rights, during state post conviction proceedings are not cognizable in federal habeas proceedings.  Hassine v. Zimmerman,

34

160 F.3d 941, 954 (3d Cir. 1998)("The federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's *collateral* proceeding does not enter into the habeas calculation. . . . Federal habeas power is 'limited ... to a determination of whether there has been an improper detention by virtue of the state court judgment.'").  Third, Congress has declared by statute that the "ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."  28 U.S.C. § 2254(i).  Nor can Petitioner establish a miscarriage of justice in light of the evidence of record.  Hence, these claims are procedurally defaulted and cannot serve as the basis for habeas relief.

### 7.  The amendment

Petitioner filed an amendment to his habeas petition.  Doc. 28.  In that amendment, he appears to raise two issues: 1) that the impartiality of the trial judge was questionable in light of extra-judicial comments he made and 2) the ineffectiveness of his trial counsel in failing to request an alibi instruction.  As to the second issue of trial counsel's alleged ineffectiveness, this issue was adequately disposed of above in Paragraph C.2.

Turning to the question of the impartiality of the trial court, this issue does not merit relief.  The facts underlying this issue may be briefly summarized as follows.  While Petitioner's trial was ongoing, the trial judge appeared before a group and gave a speech in which he referenced Petitioner's trial and stated, inter alia, that "all the witnesses are drug dealers, and all the Defendants are drug dealers."  Doc. 28, Ex. B at 4.

Although Attorney Ceraso, who represented Petitioner at sentencing and post-sentencing and direct appeal was aware of this issue prior to the sentencing, he did not raise it in any post sentence motions, he specifically declined to file a motion for recusal,[16] he did not raise it in the direct appeal to the Superior Court but only raised it for the first time in the PAA. Doc. 1, Ex. 30 at 3.  Consequently, under the law of Pennsylvania, Petitioner waived this issue.  Commonwealth v. Agie, 296 A.2d 741, 741 (Pa. 1972)("We have consistently held that issues not raised in the court below are waived and cannot be raised for the first time on appeal to this Court.")(citations omitted); Commonwealth v. Steffish, 365 A.2d 865 (Pa. Super. 1976); Commonwealth v. Perea, 381 A.2d 494, 496 (Pa. Super. 1977)("The reason our review is confined to the one issue is because the other issues were not raised in the trial below or in post-verdict motions. The appellate courts of Pennsylvania have

---

[16] See State Court Record, Sentencing Transcript at 11.

consistently held that issues not raised in the court below are waived and cannot be raised for the first time on appeal."). Because this rule of waiver is independent and adequate, Petitioner has procedurally defaulted this claim. Petitioner does not argue cause and prejudice as is his burden. Hence, he has not carried his burden to invoke this exception to the procedural default doctrine.

The only claim of cause he would have now is a claim of Attorney Ceraso's ineffectiveness for failing to properly preserve this issue. However, this issue of Attorney Ceraso's ineffectiveness for failing to raise the issue of alleged judicial bias earlier was never itself raised in the state courts and hence, was itself waived under state law, and so, was itself, procedurally defaulted for federal habeas purposes. See, e.g., Edwards v. Carpenter, 529 U.S. 446, 453 (2000) (holding that "an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted"). Nor can Petitioner show cause for procedurally defaulting this specific claim of Attorney Ceraso's alleged ineffectiveness for failing to raise the judicial bias issue earlier. This is because the only claim of excuse that Petitioner would have for failing to raise this issue is the ineffectiveness of his PCRA counsel for failing to raise this precise issue of Attorney Ceraso's ineffectiveness in failing to

raise the judicial bias issue.  However, claims of PCRA counsel's ineffectiveness cannot constitute "cause" for procedural default as there is no constitutional right to counsel in PCRA proceedings.  Coleman v. Thompson, 501 U.S. at 757 ("Because [the petitioner] had no right to counsel to pursue his appeal in state habeas, any attorney error that led to the default of [his] claims in state court cannot constitute cause to excuse the default in federal habeas.");  Werts v. Vaughn, 228 F.3d at 189 n.4;  Hull v. Freeman, 991 F.2d 86, 91 (3d Cir. 1993) ("Under Coleman, ineffective assistance of post-conviction counsel cannot constitute 'cause' because the Sixth Amendment does not entitle a defendant to post-conviction counsel").

Having failed to establish cause and prejudice to excuse the procedural default of the judicial bias claim, it remains open to Petitioner to establish that a failure to review the procedurally defaulted claim will result in a "miscarriage of justice." Werts v. Vaughn, 228 F.3d at 193. The phrase "miscarriage of justice" has been explained by the Supreme Court to require a showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327 (1995); United States v. Sorrells, 145 F.3d 744, 749 n.3 (5th Cir. 1998)("The 'actually innocent' standard is the same as the 'fundamental miscarriage of justice' standard, which applies 'when a constitutional violation probably has caused the

38

conviction of one innocent of the crime.'"). Moreover, "actually innocent" means factual innocence and not just legal innocence. See Calderon v. Thompson, 523 U.S. 538, 559 (1998)("[T]he miscarriage of justice exception is concerned with actual as compared to legal innocence.").

In order to make a showing of "actual innocence" a petitioner "must satisfy a two-part test in order to obtain review of otherwise procedurally barred claims.  First, the petitioner's allegations of constitutional error must be supported with new reliable evidence not available at trial. *Schlup*, 513 U.S. at 327-28. Second, the petitioner must establish 'that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.' *Id*. at 327." Amrine v. Bowersox, 238 F.3d 1023, 1029 (8th Cir. 2001).  It is not enough that in light of the new evidence a reasonable doubt may exist as to the Petitioner's guilt, the test is even more onerous than that.  In Schlup, the Supreme Court reiterated that "[t]he meaning of actual innocence as formulated by *Sawyer* and *Carrier* does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty." Schlup, 513 U.S. at 329.

The first prong of the two part test, i.e., whether the proffered evidence is new, provides that "evidence is new only if

39

it was not available at trial and could not have been discovered earlier through the exercise of due diligence." Amrine v. Bowersox, 238 F.3d at 1028.  Petitioner's claim of actual innocence flounders on this ground as he offers no new evidence of innocence.

Lastly, Petitioner sought to have this court address an illegal sentence issue.  Doc. 31 at ¶ 10.  It is not exactly clear what this illegal sentencing issue is.  However, in his motion to correct the record, Doc. 31, he did append an opinion by the state court, disposing of what purported to be a state habeas petition filed by Petitioner and raising the question of whether all of Petitioner's crimes should have merged for sentencing purposes.  The state court held that a habeas petition was not the proper procedure by which to bring this issue and that he could only raise this issue in a PCRA petition. Moreover, the court ruled that the crimes should not have merged for sentencing purposes.

To the extent that the "illegal sentence claim" Petitioner seeks to raise herein is a claim that his sentences should have merged, it is not cognizable because the doctrine of merger is a state law issue, not a federal law issue.  See, e.g., U. S. ex rel. Morton v. Brierley, 299 F.Supp. 95 (E.D. Pa. 1969).  See also Engle v. Isaac, 456 U.S. 107 (1982)(violations of state law or procedural rules alone are not sufficient; a petitioner must

allege a deprivation of federal rights before habeas relief may
be granted); <u>Wells v. Petsock</u>, 941 F.2d 253 (3d Cir. 1991)(same).
Accordingly, this issue does not merit federal habeas relief.

### D.   Certificate of Appealability

A certificate of appealability ("COA"), which is a
prerequisite for allowing an appeal to a Court of Appeals, should
not be issued unless the petitioner "has made a substantial
showing of the denial of a constitutional right."  28 U.S.C. §
2253 (c)(2).  A "substantial showing" requires a habeas
petitioner to show that "jurists of reason would find it
debatable whether the petition states a valid claim of the denial
of a constitutional right[.]"  <u>Slack v. McDaniel</u>, 529 U.S. 473,
484 (2000). <u>See also Walker v. Government of The Virgin Island</u>,
230 F.3d 82, 89-90 (3d Cir. 2000).

Applying this standard to the instant case, the court
concludes that jurists of reason would not find it debatable
whether the petition states a valid claim of the denial of a
constitutional right.  Accordingly, a certificate of
appealability should be denied.[17]

---

[17]  Although the court may have been inclined to issue a
certificate of appealability as to the issue of whether the <u>Hill v.</u>
<u>United States</u> standard or the AEDPA standard applies to federal law
(as opposed to Constitutional) claims, COAs apparently should not be
issued to address non-Constitutional issues.  <u>United States v. Cepero</u>,
224 F.3d 256, 262-3 (3d Cir. 2000)(COA may issue only to address
violations of the constitution not mere federal law violations).

## III.   **CONCLUSION**

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have seven (7) days from the date of service of the objections to respond thereto.  Failure to timely file objections may constitute a waiver of any appellate rights.


Respectfully submitted,


/s/ Amy Reynolds Hay
AMY REYNOLDS HAY
United States Magistrate Judge

Dated:   7 February, 2006.

cc:  Hon. Joy Flowers Conti
     United States District Judge

     William Boyd
     CL-4221
     SCI Frackville
     1111 Altamont Boulevard
     Frackville, PA 17931

     Ronald M. Wabby, Jr.
     Office of the District Attorney
     Appeals/Post Conviction
     401 Allegheny County Courthouse
     Pittsburgh, PA 15219