IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM BOYD, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 2:05-115 |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Patricia L. Dodge |
| ROBERT SHANNON, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

**MEMORANDUM**[1]

Pending before the Court is a Motion for Relief from Judgment (ECF 62) filed by state prisoner William Boyd under Rule 60(b)(6) of the Federal Rules of Civil Procedure. For the reasons below, the Court will deny the Motion and deny a certificate of appealability.

**I.  Relevant Background**

Boyd's state criminal cases arose from two shooting incidents that occurred in January 1991 and which marked the culmination of increasingly violent disputes between rival groups of illegal drug dealers. Boyd was the leader of one of the groups, and he was charged in two indictments. The first indictment related to the January 11, 1991 shooting of Tom Easley. Boyd was charged with one count of criminal conspiracy, three counts of aggravated assault, and one count of violation of the Uniform Firearms Act. The second indictment charged that Boyd conspired to kill rival drug dealers and that on January 22, 1991, he engaged in three counts of aggravated assault and violated gun laws by shooting into a car which held one of his rivals. The

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a U.S. Magistrate Judge conduct proceedings in this case, including entry of a final judgment. (ECF 65, 66.)

shooting resulted in the severe wounding of three people (Mark Walker, Bryant Gilmore and the two-year-old son of George Hilliard).

Boyd and his co-defendant Raymond Childress' joint jury trial was held in April 1994. The trial court summarized the evidence introduced at the trial as follows:

> Beginning in 1987, [Boyd] was the leader of a narcotics trafficking organization with included Kelly Bell, Raymond Childress and Will Smith among his inner circle. Members of the organization possessed firearms and used violence to further the aims of their narcotics business. In early 1990, Boyd's organization had a conflict with a rival organization headed by Eric "E-man" Jefferies. Other members of the Jefferies gang included Tom Easley, Ron Ashby, Terrell Bush and George Hilliard. The conflict ultimately became a full fledged turf war with shootings and retaliatory shootings by January of 1991.
>
> By way of background, William Boyd and Kelly Bell were childhood friends, having grown up together in Wilkinsburg. In October, 1982, Boyd and Bell were involved in a shooting incident in Wilkinsburg. Boyd was tried as a juvenile, while Bell was tried as an adult. Bell received a sentence of 5 to 10 years and was committed to the state correctional system.
>
> At some point in 1987, while Bell was serving his prison sentence at the State Correctional Institution at Huntingdon, Boyd became involved in the illegal sales of cocaine. Boyd's business, "Video Music Unlimited" (a video store in Wilkinsburg) was the central distribution point for his drug trafficking operation.
>
> Bell was paroled from SCI Huntingdon to a hallway house in East Liberty in December of 1988. As a condition of his parole, Bell was required to maintain employment. Bell began working as a "cashier" for Video Music Unlimited. Eventually, however, Bell joined Boyd in the drug business as his number one lieutenant. Other members of Boyd's distribution ring at that time (1988-1989) included Will Smith, Brian Thornhill, Eric Cooper and Eric "E-man" Jefferies.
>
> While in prison at SCI Huntingdon, Bell had become good friends with an inmate by the name of Kevin Williams, who was serving time for aggravated assault. Following his release from prison, Bell maintained his contact with Williams and regularly put money in Williams' prison account. When Williams was paroled in January, 1990, he went to work for the Boyd/Bell gang, first as a drug seller and later as an enforcer. In early 1990, Raymond Childress became a clerk at Boyd's video store in Wilkinsburg. Eventually, Childress also became involved in drug sales with the Boyd/Bell gang.
>
> In the spring of 1990, Boyd learned that Eric "E-man" Jefferies had been purchasing cocaine from individuals other than him. In order to teach Jefferies a lesson for this "disloyalty," Boyd and Bell "ripped off" Jefferies for a large amount of cocaine. This episode prompted a full fledged turf war between the Boyd and Jefferies organizations.

2

From the summer of 1990 through the late fall, a series of barroom altercations, some involving firearms, occurred among members of the two organizations. Eventually, these altercations turned to violence with multiple shootings and retaliatory shootings by January of 1991.

On December 25, 1990, Boyd, Childress and other members of the Boyd gang crashed a private party given by Jefferies at the Vapors Lounge in McKeesport and started a fight. In the course of that fight, Boyd pointed a gun a George Hilliard, an associate of Jefferies. When this fight continued outside the bar, Boyd again pulled a gun and pointed it at Tom Easley, also an associate of Jefferies.

In the early morning hours of December 29, 1990, Ron Ashby, a member of the Jefferies organization, shot William Boyd in the back outside of the Hollywood Club in Homewood. From this point forward, Bell, Childress and Will Smith began actively seeking members of the Jefferies organization to retaliate for the shooting of Boyd. As part of this effort, Bell enlisted the help of his jailhouse friend, Kevin Williams.

On December 30, 1990, Bell, Childress, Williams and Smith went to the apartment of George Hilliard, another member of the Jefferies organization. Bell fired several shots through Hilliard's door, but no one was injured. Immediately thereafter, Bell, Childress, Williams and Smith went to visit Boyd in the hospital. Boyd was informed about the shooting that day and instructed the foursome to "keep taking care of business," *i.e.*, to continue to seek out and shoot anyone from the Jefferies organization. William Boyd was released from the hospital on January 4, 1991.

On January 8, 1991, Kelly Bell was standing on Wood Street in Wilkinsburg when a car drove by and he was shot. Ron Ashby, an associate of Jefferies, was again the assailant. Boyd was furious.

During the evening of January 8, 1991, Boyd and Childress went to the home of Keven Williams and picked him up. There in private before they left, Boyd offered Williams $5,000 to kill Eric Jefferies and his associates. Boyd and Childress then took Williams into the car and drove around Lawrenceville, East Hills and Penn Hills pointing out to Williams the different homes and apartment buildings in which Jefferies and his associates lived. They also pointed out the different automobiles that the members of the Jefferies organization drove. The next day, Boyd purchased a Bronco for Williams. Boyd also provided Williams with a 9 mm Smith and Wesson pistol.

On January 11, 1991, Boyd and Williams staked out the residence of Jefferies in Penn Hills in an attempt to catch him there. While Boyd was taking his turn as the "lookout," Tom Easley, in his car, entered the driveway and parked. Boyd opened fire on Easley, hitting him several times. Boyd and Williams then drove away.

On January 22, 1991, Boyd and Williams returned to the Hilliard residence in the Lawrenceville section of Pittsburgh. After staking out the apartment for several hours, they saw several individuals getting into a car that they recognized as being Hilliard's. Williams got out of the car and began shooting into the vehicle. Bullets struck the driver, Mark Walker, his cousin, Bryant Gilmore and … the two-

3

year old son of George Hilliard. After Williams stopped shooting, Boyd ordered him to continue firing, and then grabbed the gun himself and fired several more shots into the vehicle.

      Following the shooting, Boyd gave Williams $1,000 and told him to leave town immediately. Later that evening, Williams was driving in East Liberty when a Pittsburgh Police Officer noticed Williams' Bronco, which matched the description given by witnesses to the shooting earlier that day. After leading police on a high speed chase, Williams was eventually taken into custody. A 9 mm Smith and Wesson pistol was recovered from Williams' vehicle. Crime Lab analysis determined that this was the firearm used in the shootings of Easley on January 11 and of Walker, Gilmore and Hilliard on January 22.

(Trial Ct. Op., 9/2/1995, ECF 11 at 288-92.)

At the conclusion of the trial, the jury found Boyd guilty on all counts. The trial court sentenced him to an aggregate term of imprisonment of 50 to 100 years. The Superior Court of Pennsylvania affirmed Boyd's judgment of sentence on direct appeal in *Commonwealth v. Boyd*, 679 A.2d 1284 (Pa. Super. Ct. 1996).

In March 1997, Boyd filed his first state petition for collateral relief under Pennsylvania's Post Conviction Relief Act ("PCRA"). The trial court (now the PCRA court) denied Boyd relief. The Superior Court affirmed the PCRA court's decision in *Commonwealth v. Boyd*, 835 A.2d 827 (Pa Super. Ct. 2003). Boyd then filed a second PCRA petition, which was denied in 2007 because it was untimely under the PCRA's one-year statute of limitations.[2] *Commonwealth v. Boyd*, 938 A.2d 1108 (Pa. Superior Ct. 2007).

---

[2] The PCRA's one-year statute of limitations is codified at 42 Pa.C.S. § 9545(b). It is jurisdictional, *see, e.g.*, *Commonwealth v. Ali*, 86 A.3d 173, 177 (Pa. 2014), and it provides, in relevant part, that any PCRA petition "(1)… shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that…. (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence[.]" 42 Pa.C.S. § 9545(b)(1)(ii).

In the meantime, in 2005 Boyd initiated this federal habeas case by filing a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254. Boyd raised more than 10 claims for relief. (ECF 32 at pp. 10-11, 18-40 (discussing Boyd's claims); ECF 38 at pp. 1-2 (same)).

On April 20, 2006, the Court dismissed Boyd's habeas petition, denied a certificate of appealability on all claims, and entered judgment for Respondents. (ECF 32, 38, 39.) The Court denied some of Boyd's claims on the merits and denied others because Boyd waived them under state law and, as a result, procedurally defaulted them for purposes of federal habeas review.

In analyzing Boyd's procedurally defaulted claims, the Court explained that neither of the two exceptions applied that would allow him to avoid his default and receive merits review of those claims. (ECF 32 at pp. 34-35; ECF 38 at pp. 3-4.) The first exception, the Court explained, is when a petitioner establishes "cause for the default and actual prejudice as a result of the alleged violation of federal law[.]" *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "'Cause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[.]" *Id.* at 753 (emphasis in original). Under the law in effect at the time the Court issued its 2006 judgment, Boyd *could not* establish "cause" by showing that his PCRA counsel was ineffective for allegedly waiving a defaulted claim. *Id.*

The second exception to the procedural default rule applies only in the rare case when the petitioner shows a "fundamental miscarriage of justice" would occur if the federal habeas court does not review a claim on the merits. This exception, which the Supreme Court recognized in *Schlup v. Delo*, 513 U.S. 298, 316 (1995), provides a "gateway" through which the federal habeas court can examine the merits of an otherwise defaulted claim if the petitioner has evidence of his "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial

5

unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]"[3] 513 U.S. at 316. The Court held that Boyd's case was not the rare case that implicated *Schlup's* "actual innocence" exception to the procedural default doctrine. (ECF 32 at pp. 30 n.15, 34-35; ECF 38 at pp. 3-4.)

After the Court denied Boyd's habeas petition, he filed an appeal with the Court of Appeals for the Third Circuit. (ECF 40.) In January 2007, the Court of Appeals denied Boyd's request for a certificate of appealability because Boyd did not show that "reasonable jurists would 1) debate the District Court's procedural ruling with regard to his procedural default of several claims, or 2) find the District Court's assessment of his constitutional claims debatable."[4] (ECF 46.)

Over the next twelve years, Boyd filed at least four unsuccessful PCRA petitions in which he asserted that he was innocent of the January 11, 1991 shooting of Tom Easley.[5] (ECF 61-1 at

---

[3] The Supreme Court explained in *Schlup* that "[t]o be credible, such a [gateway] claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." 513 U.S. at 324. "Actual innocence" means factual innocence, not legal insufficiency. *Sistrunk v. Rozum*, 674 F.3d 181, 191 (3d Cir. 2012) (citation omitted).

[4] In April 2007, Boyd filed his first motion for relief from judgment under Rule 60(b). (ECF 49) He raised issues that are not relevant to the disposition of the instant Motion. The Court denied Boyd's first Rule 60(b) motion (ECF 50 at p. 5) and the Court of Appeals denied his subsequent request for a certificate of appealability. (ECF 60.)

[5] The PCRA at 42 Pa.C.S. § 9543(a)(2) lists what types of substantive claims may be litigated in a post-conviction proceeding. Of relevance to Boyd's successive PCRA proceedings are claims alleging "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S. § 9543(a)(2)(vi); *see also Albrecht v. Horn*, 485 F.3d 103, 123 (3d Cir. 2007) (describing this provision of the PCRA as "the provision of the state post-conviction relief act dealing with claims of innocence based on after discovered evidence."). In many of Boyd's PCRA proceedings, he asserted that he was raising an "after-discovered evidence" claim of innocence under § 9543(a)(2)(vi). To establish such a claim under Pennsylvania law, a petitioner must prove that (1) the evidence has been discovered after trial and it could not have been obtained prior to
*Footnote continued on next page….*

pp. 3-5.) In a PCRA petition Boyd filed around January 2010, he relied on an affidavit by Terrell Bush dated December 22, 2009 ("2009 Bush Affidavit"), in which Bush asserted that Boyd was not the individual who shot Easley. (Pet's Ex. F, ECF 61-5 at pp. 2-3.) Boyd also relied on an affidavit by his co-defendant William Childress dated January 21, 2010 ("2010 Childress Affidavit"). (Pet's Ex. E, ECF 61-6 at pp. 2-3.) Childress claimed that he knew that Kevin Williams gave false testimony at the April 1994 trial. (*Id.*)

The PCRA court held an evidentiary hearing on January 10, 2011, at which Bush and Childress testified. Following this hearing, the PCRA court dismissed Boyd's claims as time-barred under the PCRA's one-year statute of limitations, finding that none of them fell within the statutory exceptions to that limitations period. After Boyd appealed to the Superior Court, the PCRA court issued an opinion in which it thoroughly discussed Bush's and Childress' hearing testimony and explained why Boyd was not diligent in presenting the evidence at issue. (PCRA Ct. Op. at pp. 8-17.)[6] The PCRA court also expressly held that neither Bush's nor Childress' hearing testimony was credible. (*Id.* at p. 19, "Bush's testimony was not credible…..; *id.* at p. 22, "Childress was not a credible witness…..")

The Superior Court affirmed the PCRA court's decision in *Commonwealth v. Boyd*, No. 1519 WDA 2011, slip op. (Pa. Super. Ct. Aug. 3, 2012). Boyd then filed an application with the Court of Appeals in which he sought authorization to file a second or successive federal habeas

---

trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict. *Commonwealth v. Cox*, 146 A.3d 221, 227-30 (Pa. 2016).

[6] The relevant orders and opinions issued by the PCRA court and the Superior Court in this PCRA proceeding are contained in the state court record. These documents are also available electronically on the Court of Appeals' docket for *In re: William R. Boyd*, C.A. No. 13-2507.

petition.[7] Boyd relied on the 2009 Bush Affidavit and the 2010 Childress Affidavit in support of that application, which was docketed at *In re: William R. Boyd*, C.A. No. 13-2507.

The Court of Appeals denied Boyd's application in an order dated June 17, 2013. It held that "although [Boyd] claims to have newly discovered evidence, he has failed to make a prima facie showing that the evidence 'could not have been discovered previously through the exercise of due diligence' and 'would be sufficient to establish…that…no reasonable factfinder would have found [him] guilty.' 28 U.S.C. § 2244(b)(2)(B)."

The next month, in July 2013, Boyd filed with the Court of Appeals another application for authorization to file a second or successive federal habeas petition. In support of this application, which was docketed at *In re: William R. Boyd*, C.A. No. 13-3249, Boyd once again relied on the 2009 Bush Affidavit and the 2010 Childress Affidavit and claimed that they showed he was innocent of shooting Easley. Boyd asserted that he was diligent in gathering this evidence and cited the then-recently issued Supreme Court decision, *McQuiggin v. Perkins*, 569 U.S. 383 (2013). In *McQuiggin*, the Supreme Court recognized that the actual-innocence gateway to federal habeas merits review developed in *Schlup* for procedurally defaulted claims extends to cases where the petitioner's claims would otherwise be barred by the expiration AEDPA's one-year statute of limitations for the filing of federal habeas claims.

---

[7] The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") mandates that before a state prisoner may file a "second or successive habeas corpus application" under 28 U.S.C. § 2254, he or she must first obtain an order from the appropriate court of appeals authorizing the district court to consider the application. 28 U.S.C. § 2244(b)(3)(A). AEDPA's allocation of "gatekeeping" responsibilities to the courts of appeals has divested district courts of jurisdiction over habeas applications that are second or successive. *See, e.g.*, *Burton v. Stewart*, 549 U.S. 147 (2007). Thus, a district court lacks jurisdiction to consider a second or successive habeas petition unless the court of appeals has granted the petitioner authorization to file it.

petition.[7] Boyd relied on the 2009 Bush Affidavit and the 2010 Childress Affidavit in support of that application, which was docketed at *In re: William R. Boyd*, C.A. No. 13-2507.

The Court of Appeals denied Boyd's application in an order dated June 17, 2013. It held that "although [Boyd] claims to have newly discovered evidence, he has failed to make a prima facie showing that the evidence 'could not have been discovered previously through the exercise of due diligence' and 'would be sufficient to establish…that…no reasonable factfinder would have found [him] guilty.' 28 U.S.C. § 2244(b)(2)(B)."

The next month, in July 2013, Boyd filed with the Court of Appeals another application for authorization to file a second or successive federal habeas petition. In support of this application, which was docketed at *In re: William R. Boyd*, C.A. No. 13-3249, Boyd once again relied on the 2009 Bush Affidavit and the 2010 Childress Affidavit and claimed that they showed he was innocent of shooting Easley. Boyd asserted that he was diligent in gathering this evidence and cited the then-recently issued Supreme Court decision, *McQuiggin v. Perkins*, 569 U.S. 383 (2013). In *McQuiggin*, the Supreme Court recognized that the actual-innocence gateway to federal habeas merits review developed in *Schlup* for procedurally defaulted claims extends to cases where the petitioner's claims would otherwise be barred by the expiration AEDPA's one-year statute of limitations for the filing of federal habeas claims.

---

[7] The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") mandates that before a state prisoner may file a "second or successive habeas corpus application" under 28 U.S.C. § 2254, he or she must first obtain an order from the appropriate court of appeals authorizing the district court to consider the application. 28 U.S.C. § 2244(b)(3)(A). AEDPA's allocation of "gatekeeping" responsibilities to the courts of appeals has divested district courts of jurisdiction over habeas applications that are second or successive. *See, e.g.*, *Burton v. Stewart*, 549 U.S. 147 (2007). Thus, a district court lacks jurisdiction to consider a second or successive habeas petition unless the court of appeals has granted the petitioner authorization to file it.

In an order dated August 8, 2013, the Court of Appeals denied Boyd's application. It held: "[Boyd] cannot obtain § 2244 authorization based on *McQuiggin*…because that decision did not announce a new rule of constitutional law and this Court has already considered, and rejected, the evidence he presented in support of his claim of actual innocence. (*See* C.A. No. 13-2507.)"

In the meantime, in June 2013, Boyd filed a fourth PCRA petition. He once again claimed that he was innocent of shooting of Easley. In support, Boyd proffered to the PCRA court an affidavit by Emmett Miles dated April 17, 2013 ("2013 Miles Affidavit"). (Pet's Ex. D, ECF 61-4 at pp. 2-3.) In it, Miles claimed that he was at the crime scene on January 11, 1991 and that Boyd was not the individual who shot Easley. (*Id.*)

The PCRA court denied this petition.[8] It held that Miles was available to Boyd at the time of trial but Boyd did not compel him to testify. The PCRA court further held that the alleged "newly discovered" information contained in the 2013 Miles Affidavit did not fall within any statutory exception to the PCRA's one-year statute of limitations. The Superior Court affirmed the PCRA court's decision in *Commonwealth v. Boyd*, 2014 WL 10918290 (Pa. Super. Ct. June 23, 2014).

Next, Boyd filed with the Court of Appeals another application for authorization to file a second or successive federal habeas petition, which was docketed at *In re: William R. Boyd*, C.A. No. 15-1244. Boyd relied on the 2009 Bush Affidavit and the 2013 Miles Affidavit and claimed that they showed he was innocent of shooting Easley.

---

[8] The PCRA court's notice of intent to dismiss Boyd's fourth PCRA petition and final order are contained in the state court record. These documents are also available electronically on the Court of Appeals' docket for *In re: William R. Boyd*, C.A. No. 15-1224.

The Court of Appeals denied Boyd's application in an order dated February 6, 2015 because he did not satisfy the applicable standard set forth in § 2244(b)(2). "In particular," the Court of Appeals held, "[Boyd] has not made a prima facie showing that no reasonable factfinder would have found him guilty when the new evidence is viewed in light of the other evidence presented at trial."

Around this same time, Boyd filed a fifth PCRA petition in which he raised sentencing-phase claims that are not relevant to the instant Motion. This unsuccessful PCRA proceeding concluded in November 2015.

Boyd filed his sixth PCRA petition in May 2016. In this petition, which Boyd filed through counsel, he claimed Easley recanted his trial testimony. Boyd proffered to the PCRA court an affidavit by Easley dated October 29, 2015 ("2015 Easley Affidavit"), in which Easley stated that although he testified at the trial that Boyd shot him, "[he] did not actually see who shot [him]," and did "not know if it was Boyd who shot [him] or not." (Pet's Ex. C, ECF 61-3 at pp. 2-3.)

The PCRA court dismissed this petition as time-barred under the PCRA's one-year statute of limitations.[9] The PCRA court further held that even if the petition was timely filed, the averments contained in the 2015 Easley Affidavit did not establish that Boyd was entitled to a new trial. It noted that recantation testimony is "notoriously unreliable," particularly when, as with Easley, the affiant claims that he committed perjury when he testified at trial. The PCRA court also held that Easley's affidavit was not exculpatory since Easley stated in it that he did not see who shot him. Thus, Easley could not say one way or the other if Boyd was the shooter.

---

[9] The PCRA court's notice of intent to dismiss Boyd's sixth PCRA petition and final order are contained in the state court record. These documents are also available electronically on the Court of Appeals' docket for *In re: William R. Boyd*, C.A. No. 18-2852.

The Superior Court affirmed the PCRA court's decision in *Commonwealth v. Boyd*, 2017 WL 5153205 (Pa. Super. Ct. Nov. 7, 2017). Boyd then filed with the Court of Appeals yet another application for authorization to file a second or successive federal habeas petition, which was docketed at *In re: William R. Boyd*, C.A. No. 18-2852. Boyd relied on the 2015 Easley Affidavit.

The Court of Appeals denied this application in an order dated September 18, 2018, holding that Boyd did not satisfy the standard set forth in § 2244(b)(2). It noted, among other things, that the 2015 Easley Affidavit did not amount to new facts that "if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found him guilty of the underlying offense."

More than five years later, in December 2023, Boyd filed the instant Motion for Relief from Judgment under Rule 60(b)(6). (ECF 62; Brief in Support, ECF 61.) He asserts that the Court should vacate the 2006 judgment and consider on the merits the claims the Court dismissed as procedurally defaulted. Boyd maintains that he is entitled to such relief because there have been intervening changes in the law brought about by the Supreme Court's decisions in *Martinez v. Ryan*, 566 U.S. 1 (2012) and *McQuiggin v. Perkins*, 569 U.S. 383 (2013) that now would allow him to avoid the default of his claims and receive a merits review of them. Boyd contends that *Martinez* and *McQuiggin* and their progeny, as well as his alleged "newly-discovered" evidence showing he is innocent of shooting Easley, amount to exceptional circumstances justifying Rule 60(b)(6) relief.

Respondents have filed their answer (ECF 70) opposing the Motion and the state court record, and Boyd has filed his reply (ECF 77). Boyd's Motion is thus fully briefed.

11

## II.  Discussion

### A.  Boyd's Motion Is Not an Unauthorized Second or Successive Habeas Petition

In *Gonzalez v. Crosby*, 545 U.S. 524 (2005), the Supreme Court addressed the circumstances in which the use of Rule 60(b) is "inconsistent with" AEDPA's second or successive petition requirements and, as a consequence, is not available to a state prisoner seeking habeas relief. It explained that a Rule 60(b) motion must be construed as a "second or successive habeas corpus application" when it advances one or more "claims." 545 U.S. at 531-32 (quoting § 2244(b)(1) and (2)). "In most cases," the Supreme Court observed, "determining whether a Rule 60(b) motion advances one or more 'claims' will be relatively simple." *Id.* at 532. "A motion that seeks to add a new ground for relief…will of course qualify." *Id.* The Supreme Court further instructed that a petitioner is also advancing a habeas claim in a Rule 60(b) motion if he "attacks the federal court's previous resolution of a claim on the merits, since alleging that the court erred in denying habeas relief on the merits is effectively indistinguishable from alleging that the movant is, under the substantive provisions of the statutes, entitled to habeas relief." *Id.* (footnote omitted). Similarly, a motion that seeks to present newly discovered evidence in support of a claim that was previously denied represents a habeas claim. *Id.* In contrast, a motion is a "true" Rule 60(b) motion if it challenges a procedural ruling that the district court made that precluded a merits determination of the habeas petition, *id.* at 532 n.4, or "challenges a defect in the integrity of the federal habeas proceedings," such as an argument that the opposing party committed fraud upon the court, *id.* at 532.

Boyd expressly states in his Motion that he is not asserting any new claim for habeas relief. (ECF 61 at pp. 11, 18.) He confirms that he is asking the Court to reconsider the procedural ruling it made in its 2006 decision denying many of his habeas claims as procedurally defaulted because,

12

he argues, intervening case law and alleged new evidence of his innocence requires the Court to do so. (*Id.*) Thus, Boyd's Motion is a true Rule 60(b) motion and not an unauthorized second or successive habeas petition. The Court therefore has jurisdiction to consider the Motion.

### B. Boyd's Motion Has No Merit

Boyd brings his Motion under Rule 60(b)(6), which requires him to "show extraordinary circumstances justifying the reopening of a final judgment." *Gonzalez*, 545 U.S. at 535 (internal quotations and citations omitted). "Such circumstances will rarely occur in the habeas context." *Id.*

Boyd maintains that the Supreme Court's decision in *Martinez v. Ryan*, 566 U.S. 1 (2012), which changed the law on how a petitioner may establish "cause" to overcome the default of a claim, is an extraordinary circumstance that requires this Court to vacate its 2006 judgment, excuse the default of his claims, and review those claims on the merits. As explained above, at the time that the Court issued its 2006 judgment, the general rule was that a petitioner *could not* rely on PCRA counsel's ineffectiveness to establish the "cause" necessary to overcome the default of a federal habeas claim. In 2012, around six years after the Court issued its decision in this case, the Supreme Court decided *Martinez* and announced a narrow exception to this rule. In *Martinez*, the Supreme Court held that in states like Pennsylvania, where the law requires that claims of ineffective assistance of trial counsel be raised for the first time in a collateral proceeding, a petitioner may overcome the default of a claim of *trial counsel's ineffectiveness* by showing that *PCRA counsel was ineffective* for failing to raise the claim at issue.[10] *Martinez*, 566 U.S. at 17.

---

[10] Specifically, the petitioner must demonstrate: (1) the defaulted claim of trial counsel's ineffectiveness is "substantial" and (2) PCRA counsel was ineffective for (3) failing to raise that claim in the "initial review collateral proceeding" (meaning to the PCRA court). *Martinez*, 566 U.S. at 17.

The holding in *Martinez* is limited to defaulted claims asserting that *trial counsel was ineffective*. *Davila v. Davis*, 582 U.S. 521, 524-38 (2017). It does not apply to any other type of defaulted claim. *Id.*

The Court of Appeals has explained that "we have consistently taken the position 'that intervening changes in the law *rarely* justify relief from final judgments under 60(b)(6)." *Satterfield v. District Attorney of Philadelphia*, 872 F.3d 152, 161 (3d Cir. 2017) (quoting *Cox v. Horn*, 757 F.3d 113, 121-22 (3d Cir. 2014)) (emphasis supplied in *Cox*). It further explained, however, that there is no "*per se* or bright-line rule that a particular change in the law is never an extraordinary circumstance," and that, instead, "we adhere to a 'case-dependent analysis' rooted in equity. This analysis manifests as a 'flexible, multifactor approach to Rule 60(b)(6) motions…that takes into account all the particulars of a movant's case,' even where the proffered ground for relief is a post-judgment change in the law." *Id.* (quoting *Cox*, 757 F.3d at 122).

The Court of Appeals has instructed that when a petitioner relies on an intervening change of the law in his Rule 60(b) motion, a district court should consider these factors: (1) "the general desirability that a final judgment should not be lightly disturbed;" (2) the fact that "the procedure provided by Rule 60(b) is not a substitute for an appeal;" (3) that Rule 60(b) "should be liberally construed for the purpose of doing substantial justice;" (4) whether "the motion is made within a reasonable time;" (5) "whether there is any intervening equities which make it inequitable to grant relief;" and (6) "any other factor that is relevant to the justice of the [order] under attack[.]" *id.* at 161 n.10 (internal citations and quotations omitted).

Although none of these factors weigh in favor of granting Boyd relief under Rule 60(b)(6), his failure to file the instant Motion within a reasonable time is most notable. The Supreme Court decided *Martinez* in March 2012 and Boyd did not file the instant Motion until more than 11 years

14

later, in December 2023. Thus, Boyd did not file the Motion within a reasonable time after *Martinez* was decided.[11]

Boyd's reliance on the Supreme Court's 2013 decision *McQuiggin* fares no better. He did not file the instant Motion within a reasonable time after *McQuiggin* was decided either. Moreover, *McQuiggin* does not qualify as an intervening change in the law in this case. As discussed above, when the Court issued its 2006 decision it recognized that Boyd could avoid the procedural default of his claims under *Schlup* if he established a "gateway" claim of actual innocence. The Court held that he did not do so. In *McQuiggin*, the Supreme Court extended *Schlup's* rule to claims that were time-barred under AEDPA's one-year limitations. Since this Court did not hold that any of Boyd's claims were time-barred, *McQuiggin* does not apply to any claim Boyd raised in this case.

Finally, in support of his contention that he has "new" evidence to support a gateway claim of actual innocence, Boyd relies on the 2009 Bush Affidavit, the 2010 Childress Affidavit, the 2013 Miles Affidavit and the 2015 Easley Affidavit. He also relies on a report allegedly prepared

---

[11] The Court notes that in *Shinn v. Ramirez*, 142 S. Ct. 1718 (2022), the Supreme Court has now limited the effect of *Martinez*. In *Shinn*, the Supreme Court held that when a petitioner faults his PCRA counsel for failing to raise and develop evidence to support a defaulted habeas claim, the federal habeas court *is prohibited* from holding an evidentiary hearing or otherwise expanding the state court record to permit the petitioner to introduce evidence to support a merits review of that claim unless the petitioner has satisfied one of 28 U.S.C. § 2254(e)(2)'s two narrow exceptions to AEDPA's general bar on evidentiary hearings. *See also Williams v. Superintendent Mahanoy SCI*, 45 F.4th 713, 724 (3d Cir. 2022) (AEDPA's prohibition is not limited to formal evidentiary hearings and applies whenever the petitioner wants to expand the record beyond that developed in state court) (citing *Shinn*, 142 S. Ct. at 1738 and *Holland v. Jackson*, 542 U.S. 649, 653 (2004)). There is no indication that Boyd could overcome § 2254(e)(2)'s demanding standard. Therefore, even if the Court assumed without deciding that Boyd could avoid the default of any claim of trial counsel's ineffectiveness under *Martinez*, he could not expand the record to include any evidence to support the merits of those claims. *Williams*, 44 F.4th 720 (explaining that the federal habeas court "need not dwell" on the issue of whether the petitioner can overcome his default if the petitioner cannot show that his trial counsel was ineffective when considering *only the facts developed in state court*.)

by a polygraph examiner after he took a lie-detector test. Boyd claims that this report shows that he was not deceptive in his responses stating that he did not shoot Easley.[12] (Pet's Ex. B, ECF 61-2 at pp. 2-4.)

Boyd has possessed the affidavits for many years and the polygraph report since around April 27, 2021. He did not file the instant Motion within a reasonable time after obtaining any of these documents and for that reason alone they do not support his request for relief under Rule 60(b)(6).

Moreover, the PCRA court determined that Bush and Childress were not credible,[13] and Boyd's other evidence has limited, if any, value. Easley merely stated in his affidavit that *he did not know* if Boyd was the one who shot him. As for Miles, he admitted in his affidavit that he originally told the police that he did not see who shot Easley. And, as the PCRA court explained, Miles was available to Boyd at the time of trial but Boyd did not compel him to testify. As for the polygraph examiner's report,[14] Boyd has not explained why he did not first submit it to the state court if he thought it had any value in his quest to be exonerated of the crime of shooting Easley.

---

[12] Boyd admits that his alleged new evidence is directed only to the offense of shooting Easley on January 11, 1991, and that this evidence is not relevant to his convictions stemming from the January 22, 1991 shooting. (ECF 61 at p. 18.)

[13] Under AEDPA, as codified at 28 U.S.C. § 2254(e)(1), this Court is bound by the credibility determinations and findings of fact made by the PCRA court unless Boyd produces "clear and convincing evidence" to rebut this presumption. *See also Vickers v. Superintendent Graterford SCI*, 858 F.3d 841, 850 n.9 (3d Cir. 2017) (even in pre-AEDPA cases, "'federal habeas courts [had] no license to redetermine credibility of witnesses who demeanor ha[d] been observed by the state trial court, but not by them,'") (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) (bracketed text added by the Third Circuit)). Although there can be the rare case in which "[a] federal court can disagree with a state court's credibility determination and… conclude the decision…was incorrect by clear and convincing evidence [under § 2254(e)(1),]" *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003), this case is not one of them.

[14] The Court will assume without deciding that this report is authentic.

In any event, the polygraph report and the affidavits fall far short of the type of "new" evidence of innocence that would qualify this case as one of the rare and extraordinary ones in which the petitioner could pass through the "gateway" so that the Court could review the merits of his procedurally defaulted claims.

For all of these reasons, Boyd has not shown that there are extraordinary circumstances justifying the reopening of the final judgment entered in this case in 2006 under Rule 60(b)(6).

### III.     Conclusion

Based on the above, the Court will deny Boyd's Rule 60(b) Motion. Because jurists of reason would not find debatable the Court's disposition of this Motion, the Court also will deny a certificate of appealability. 28 U.S.C. § 2253; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

An appropriate Order follows.


Date:  September 27, 2024                     /s/ Patricia L. Dodge
                                              PATRICIA L. DODGE
                                              United States Magistrate Judge